1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11   ALBERTO FERNANDEZ,                    Civil No.    08cv0816-JLS (CAB)

12                           Petitioner,
                                           **REPORT AND RECOMMENDATION TO**
13              v.                         **DENY PETITION FOR WRIT OF**
                                           **HABEAS CORPUS**
     M. MARTEL, Warden,
14
                             Respondent.
15

16        Alberto Fernandez, a state prisoner proceeding *pro se,* has filed a Petition for Writ of Habeas

17   Corpus pursuant to 28 U.S.C. § 2254, raising two grounds for relief.  The Court has considered the

18   Petition, Respondent's Answer and Memorandum of Points and Authorities, and all supporting

19   documents submitted by the parties.  Based upon the documents and evidence presented in this case, and

20   for the reasons set forth below, the Court **RECOMMENDS** that the Petition be **DENIED** and the case

21   be **DISMISSED WITH PREJUDICE**.

22                        **I.  FACTUAL BACKGROUND**

23        This Court gives deference to state court findings of fact and presumes them to be correct;

24   Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

25   U.S.C. § 2254(e)(1); *see also Parke v. Baley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical

26   fact, including inferences properly drawn from such facts, are entitled to statutory presumption of

27   correctness).  Because Petitioner has not attempted to rebut the factual findings made by the state court,

28   the following facts are taken from the California Court of Appeal opinion in *People v. Fernandez*, No.

1    D048685, slip op. (Cal. Ct. App. June 21, 2007):

2         This case involves Fernandez's ongoing sexual abuse of his daughter E. from
     September 2000 to June 2004 when E. was between the ages of 10 and 14.

3

4         E.'s testimony revealed that the sexual abuse commenced during a time period
     when her mother was employed outside the home and Fernandez was no longer employed
     because of a work-related injury.  Typically, the sexual assaults would occur during the

5    afternoon after school when Fernandez would arrange to be alone with E. by sending E.'s
     brother to the store.  In later years, the sexual abuse occurred at night when the other

6    family members were sleeping.  During many of the incidents, Fernandez's pattern of
     behavior was to touch E.'s breasts, have sexual intercourse with her, ejaculate into a

7    tissue, and threaten to hurt the family if she reported the assaults.

8         The first assault occurred when the family lived in a home on Logan Avenue and
     E. was 10 years old.  Fernandez touched E.'s breasts over her clothes while they were in

9    the kitchen, and then took her to the bedroom where he removed her clothes and had
     sexual intercourse with her.  About two months later, Fernandez touched her breasts

10   while she was in the bathroom, and then took her to the bedroom and had sexual
     intercourse with her.  E. estimated that Fernandez had sexual intercourse with her on two

11   other occasions while they were living on Logan Avenue.

12        Fernandez continued the molestation when the family moved to their first home
     on Valle Avenue (Valle 1).  When E. was in the sixth grade, he had sexual intercourse

13   with her on the floor in the bedroom she shared with her brother while her brother was at
     the store.  On two other occasions, he had sexual intercourse with her in the bathroom and

14   in his bedroom.

15        E. also described an incident at Valle 1 when Fernandez asked E.'s mother to
     bring his socks into the bathroom.  Her mother told E. to bring the socks, and when E. did

16   so, Fernandez locked the bathroom door and had sexual intercourse with E.  Fernandez
     instructed E. to tell her mother that she had stayed in the bathroom because she was

17   "peeing."  Fernandez also engaged in anal intercourse with E. on one occasion in the
     bathroom at Valle 1 when no one else was at home.

18

19        Fernandez also molested E. at their second home on Valle Avenue (Valle 2),
     when she was about 13 or 14 years old.  At this residence, E. had her own bedroom

20   upstairs while her parents' bedroom was downstairs.  When her mother and brother were
     asleep at night, Fernandez came upstairs to E.'s bedroom, put his mouth on her breast,

21   and had sexual intercourse with her on the floor. He told her not to make noise because
     she would wake up her brother.  Fernandez repeated this conduct on several other

22   occasions.

23        Apart from the sexual intercourse, on various occasions while living at Valle 2
     Fernandez touched E.'s breasts and grabbed her buttocks.  When she was in about the

24   eighth grade, he touched her breasts and buttocks while she was in her bedroom in the
     afternoon.  When she was in about the ninth grade, he touched her breasts while she was

25   in the living room.[1]

26        In addition to the sexual abuse directed at E., Fernandez physically abused E., her
     mother, and her brother.  In March and April 2004, E. was hospitalized after she

27

28   _____
     [1]  On cross-examination, E.'s description of the order and location of the sexual assaults
     occurring over the years was somewhat different than her description on direct examination.  E.
     explained that she had trouble remembering the incidents in order.

2

attempted suicide.  On June 4, 2004, Fernandez had a therapy session with a psychiatrist who had been treating him for psychological problems associated with his work-related injury.  On June 7, 2004, Fernandez unexpectedly called the psychiatrist and told him that "there was more to say, that he hadn't dared to say before."  Fernandez, sounding worried and ashamed, told the psychiatrist that about two and one-half years earlier he had "touched [E.] all over."  When queried by the psychiatrist, Fernandez admitted that he had touched parts of her body (for example, her legs), but denied having sex.  The psychiatrist interpreted Fernandez's statements to mean that he had touched her body with his hands for sexual satisfaction, and reported the information to Child Protective Services (CPS).

A medical examination of E.'s vaginal and anal areas in July 2004 showed normal results with no sign of injury.  According to a defense expert, her hymen (tissue at the vaginal opening) was intact.  Testifying for the prosecution, Dr. Emma Raizman stated that the genital and anal areas of children and adolescents usually appeared normal regardless of reported sexual abuse history.  She explained that physical signs of sexual abuse are rare because injuries to these areas heal quickly; the anus can expand to fit "rather large bowel movements" without any injury; and when a child reaches puberty the hymen becomes "redundant" (i.e., folded in on itself, thickened, and stretchy) which allows penetration without injury.  Dr. Raizman testified that the concept that a "broken" hymen meant loss of virginity was a misconception because the hymen "almost always has some kind of opening in it" and it is not a "solid piece of tissue that's popped or broken with first intercourse."

E. told Dr. Raizman that she started menstruating when she was 10 years old, which indicated that she had an "estrogenized hymen" at the time the abuse began and made it less likely there would be signs of injury to that area.  When Dr. Raizman examined E.'s hymen, she observed that it was well estrogenized, stretchy, and redundant.  She acknowledged that a broken hymen cannot actually grow back, but opined that a torn hymen can fully heal and further a hymen can remain intact even with ongoing vaginal intercourse.

Disagreeing with Dr. Raizman, Dr. Leeland Lapp testified for the defense that the hymen is not designed to stretch; that estrogenation impacts the elasticity of the vagina but not the hymen; and that a normal-size penis could not enter a vagina without breaking the hymen.  Dr. Lapp examined Fernandez and determined his penis was of normal size.  Dr. Lapp opined that Fernandez's penis could not have entered E.'s vagina without breaking the hymen.

Persuaded by the prosecution's evidence, the jury convicted Fernandez of the charged sexual offenses.

(Lodgment 22, at 2-5.)

## II.  PROCEDURAL BACKGROUND

On February 9, 2006, a jury found Petitioner guilty of three counts of aggravated sexual assault on a child (Cal. Penal Code § 269), six counts of committing a forcible lewd act upon a child (Cal. Penal Code § 288(b)(1)), and one count of committing a lewd act upon a child 14 or 15 years old (Cal. Penal Code § 288(c)(1).  (Lodgment 1, Clerk's Transcript, at 104-13, 236-38.)  On May 19, 2006, the trial court sentenced Petitioner to 15 years to life, plus eight years and eight months in prison.  (*Id.* at 185-89,

244-45.)  On December 12, 2006, Petitioner appealed his conviction to the California Court of Appeal. (Lodgment 19.)  The state appellate court affirmed the judgment on June 21, 2007.  (Lodgment 22.)  On July 13, 2007, Petitioner filed a petition for review in the California Supreme Court.  (Lodgment 23.)  The petition for review was denied on August 31, 2007.  (Lodgment 24.)

On February 15, 2008, Petitioner filed the instant Petition for Writ of Habeas Corpus in the Eastern District of California.  [Doc. No. 1, at 7-18.]  On April 30, 2008, the case was transferred to this Court, because the conviction was entered by the San Diego County Superior Court, and witnesses and evidence necessary for the resolution of the Petition are more readily available in the Southern District.  [*Id.* at 2-3.]  On July 11, 2008, Respondent filed an answer to the Petition.  [Doc. No. 4.]  If Petitioner wished to file a Traverse, he was to do so on or before September 15, 2008.  [*See* Doc. No. 7.]  To date, Petitioner has not filed a Traverse.

## III.  DISCUSSION

### A.  Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (emphasis added).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996.  *Lindh v. Murphy*, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

08cv0816

1    28 U.S.C.A. § 2254(d).

2         To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).

3    *Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

4         Under the "contrary to" clause, a federal habeas court may grant the writ if the state court
         arrives at a conclusion opposite to that reached by this Court on a question of law or if the
5         state court decided a case differently than this Court has on a set of materially
         indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas
6         court may grant the writ if the state court identifies the correct governing legal principle
         from this Court's decisions but unreasonably applies that principle to the facts of the
7         prisoner's case.

8    *Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

9         Where there is no reasoned decision from the state's highest court, this Court "looks through" to

10   the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  If the

11   dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must

12   conduct an independent review of the record "to determine whether the state court clearly erred in its

13   application of controlling federal law."  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado*

14   *v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer,* 538 U.S. at 75-76).

15   However, a state court need not cite U.S. Supreme Court precedent when resolving a habeas corpus

16   claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  As long as neither the reasoning nor the result of the state-

17   court decision contradicts U.S. Supreme Court precedent, the state court decision will not be "contrary

18   to" clearly established federal law.  *Id.*

19   **B. Analysis**

20        Petitioner argues in his federal Petition that he was denied his due process rights by:  1) the

21   erroneous admission of evidence of alleged prior sexual assaults of his wife and sister-in-law; and 2) the

22   trial court's partial exclusion of the testimony of defense expert, Dr. Constance Dalenberg.  (Pet. 13-

23   18.)[2]  Respondent argues:  1) admission of evidence of uncharged sexual assaults did not violate due

24   process, because permissible inferences could be drawn from the evidence; and 2) the partial exclusion

25   of the defense expert's testimony did not violate due process, because the evidence was inadmissible.

26   (Mem. P. & A. in Supp. of Answer 6, 14.)  Respondent also argues the state court's denial of Petitioner's

27   claims was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme

28   

---

[2]  Citations to the Petition refer to Doc. No. 1 and the page numbers assigned by CM/ECF.

08cv0816

1  Court law.

2     **1. Claim One**

3        Claim one of the Petition alleges a violation of Petitioner's due process right, because the trial

4  court allowed evidence that Petitioner began a relationship with his wife when she was 13 years old (and

5  Petitioner was 21 years old) and evidence that Petitioner sexually assaulted his wife's sister when she

6  was 12 years old and again when she was 14-15 years old. (Pet. 13-15.)  The last reasoned state court

7  opinion that addresses this claim is the state appellate court decision of June 21, 2007, affirming the

8  judgment of the state superior court. (Lodgment 22.)  That court found that the evidence was admissible

9  under California Evidence Code § 1108 and the trial court did not abuse its discretion in admitting the

10  evidence. (*Id.* at 10-13.)

11        To the extent Petitioner raises only state evidentiary claims in his argument, these issues must be

12  rejected as not cognizable in federal habeas corpus proceedings.  Absent some constitutional violation, a

13  violation of state law does not provide a basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62,

14  67-68 (1991).  The U.S. Supreme Court has left open the question of whether admission of propensity

15  evidence violates due process.  *Id.* at 75 n.5.  Because the Supreme Court has reserved this issue as an

16  "open question," the Ninth Circuit has held that a petitioner's due process right concerning the

17  admission of propensity evidence is not clearly established for purposes of review under AEDPA.

18  *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *see also Bugh v. Mitchell*, 329 F.3d 496,

19  512-13 (6th Cir. 2003) (state court decision allowing admission of evidence pertaining to petitioner's

20  alleged prior, uncharged acts of child molestation was not contrary to clearly established Supreme Court

21  precedent because there was no such precedent holding that state violated due process by permitting

22  propensity evidence in the form of other bad acts evidence).

23        Even if this were not propensity evidence, the claim would nevertheless be without merit.

24  Erroneous state evidentiary rulings implicate the federal Constitution only if the admission of the

25  evidence violated the petitioner's due process right to a fair trial.  *Estelle*, 502 U.S. at 68-70.  In order to

26  prevail, Petitioner must show that the trial court's ruling was so prejudicial that it rendered his trial

27  fundamentally unfair.  *Id.*  In evaluating the prejudicial effect of constitutional error on collateral review,

28  a federal court must determine whether the error had "substantial and injurious effect or influence in

08cv0816

1  determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (citation omitted);

2  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted).  "Only if there are no

3  permissible inferences the jury may draw from the evidence can its admission violate due process."

4  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Here, there were rational and permissible

5  inferences the jury could draw from the challenged evidence.

6          **a.      Testimony of Petitioner's sister-in-law**

7          Prior to trial, the prosecutor moved to admit evidence of two uncharged sexual offenses

8  involving Petitioner's sister-in-law M. that occurred when M. was sleeping at the home that Petitioner

9  and his wife shared.  (Lodgment 4, Reporter's Appeal Transcript, vol. 3.)  According to the prosecutor's

10  offer of proof, the first offense occurred when M. was about 12 or 13 years old and the second offense

11  occurred when M. was about 14 or 15 years old.  (*Id.* at 105.)  During the first incident, M. was sleeping

12  in bed next to A. (Petitioner's wife) when Petitioner came home, got into bed and began rubbing his

13  body against M.'s body.  M. immediately got up and woke A.  Petitioner claimed he thought M. was A.

14  The second offense occurred when Petitioner touched M.'s breasts and stomach over her clothes while

15  she was sleeping on the couch.  When M. screamed and A. turned on the light, Petitioner claimed he was

16  looking for the door to the bathroom.  (*Id.*)

17          Defense counsel argued the evidence regarding M. was remote, irrelevant, and prejudicial.  (*Id.* at

18  102-03.)  Arguing against remoteness, the prosecutor noted that the charged offenses began in 2000,

19  which made the 1994 incident with M. just six years before the first charged incidents with E.  (*Id.* at

20  104.)  Further, the prosecutor asserted the uncharged incidents with M. were not too remote when

21  considering that the uncharged and charged incidents both involved sexual conduct with girls in the

22  same age range.  (*Id.*)

23          The trial court found the uncharged offenses with M. were similar because: 1) they involved a

24  female victim in the same age range as E. and could be viewed as involving an attempt to have sexual

25  relations; 2) the uncharged offenses were not more inflammatory than the charged offenses; and 3) there

26  was no danger of confusion or undue consumption of time.  (*Id.* at 106.)  Further, the court concluded

27  the incidents with M. were not too remote, noting that uncharged sexual offense evidence (Cal. Evid.

28  Code § 1108) was not subject to the 10-year time limitation generally applicable to uncharged domestic

1   violence evidence (Cal. Evid. Code § 1109(e)), and that the multiple sexual molestation incidents were

2   highly relevant to show propensity.  (*Id.* at 106-07.)

3          After M. testified at trial, Petitioner's attorney moved for a mistrial on the basis that M.'s

4   testimony revealed the uncharged sexual offenses were even more remote than believed during the *in*

5   *limine* hearing.  (Lodgment 7, at 488.)  According to Petitioner's attorney, it appeared that the incidents

6   occurred 18 years prior, rather that 13-15 years prior as originally thought.  (*Id.*)  The trial court rejected

7   the assertion that remoteness required exclusion of the evidence and denied the mistrial motion.  (*Id.* at

8   489.)  The court noted that it was not looking at the time between the alleged offense to the time of trial.

9   Rather, it was looking at the time between alleged offenses, which was much less than 18 years.  (*Id.*)

10         The admission of the challenged evidence was not so prejudicial that it rendered Petitioner's trial

11  fundamentally unfair.  *Estelle*, 502 U.S. at 68-70.  The evidence was relevant and probative on issues

12  central to the case.  Moreover, Petitioner has not demonstrated that the evidence had a substantial and

13  injurious effect on the jury verdict.  Petitioner does little more than recite what took place at trial and

14  provides little evidence for his argument that the trial court committed error in allowing M.'s testimony.

15  To the extent that this claim states a claim for federal habeas relief, admission of the evidence did not

16  render Petitioner's trial fundamentally unfair in violation of his due process rights.

17                        **b.     Testimony of Petitioner's wife**

18         As it relates to the testimony of Petitioner's wife A., during the *in limine* hearing, the prosecutor

19  requested permission to present evidence of Petitioner's sexual relationship with his wife A. when A.

20  was about 13 years old.  (Lodgment 4, at 93.)  The prosecutor explained that Petitioner married A. when

21  she was about 13 years old and he was about 21 years old, and that evidence of their early sexual

22  relationship was relevant to show Petitioner's propensity to be sexually attracted to girls in their early

23  teens.  (*Id.* at 93-94.)  Defense counsel stated that if the prosecutor was allowed to present this evidence,

24  the defense would present evidence that A.'s parents approved of the marriage and expert testimony that

25  marriage between a young girl and an older man was not unusual in Mexican culture.  (*Id.* at 95.)

26         At the *in limine* hearing, the trial court ruled the prosecutor could not present the evidence in its

27  case-in-chief, finding that it would result in a "mini-trial within a trial" and consume too much time, but

28  left open the possibility that the evidence might become admissible on rebuttal.  (*Id.* at 96-97, 99-100.)

1    Thereafter, at trial during cross-examination of A., defense counsel asked if Petitioner had ever raped A.

2    (Lodgment 5, at 278.)  When the prosecutor objected on relevancy grounds, defense counsel made an

3    offer of proof that evidence of recent incidents where Petitioner had raped and sodomized his wife were

4    relevant to show A.'s motive to retaliate against her husband.  (*Id.* at 281.)  After briefing from defense

5    counsel and additional discussion, the court gave defense counsel permission to question A. about

6    Petitioner's conduct of raping and sodomizing her in the latter years of their marriage.  (Lodgment 6, at

7    294-96.)

8          Based on its ruling admitting the testimony proffered by the defense, the trial court changed its

9    earlier ruling excluding the prosecution's evidence about Petitioner's sexual relationship with A. when

10   she was about 13 years old.  (*Id.* at 296-97.)  The court reasoned the defense evidence about recent rape

11   and sodomy was more inflammatory than the prosecution evidence about the early sexual relationship,

12   and given its ruling allowing admission of the defense evidence, the prosecutor should be allowed to

13   question A. about her entire sexual relationship with Petitioner.  (*Id.*)  Thereafter, A. testified that she

14   met Fernandez in California when she was 12 or 13 years old and he was 20 years old.  (*Id.* at 399-400,

15   404.)  During the month of December, when A. was about 13 or 14 years old, she ran away from her

16   mother's home in California and went to Mexico with Petitioner to get married.  (*Id.* at 406-07.)  When

17   A. was in Mexico, her mother provided a letter giving permission for her to get married.  (*Id.* at 401)

18   Petitioner and A. first had sexual intercourse at a hotel in California on their way to Mexico.  (*Id.* at 400-

19   01.)  They were married in July 1988 when A. was 14 years old.  (*Id.* at 405.)

20         Petitioner argues by allowing such testimony, the trial court denied him due process.  (Pet. 13.)

21   However, he fails to provide any support for his contention.  The admission of the challenged evidence

22   was not so prejudicial that it rendered Petitioner's trial fundamentally unfair.  *Estelle*, 502 U.S. at 68-70.

23   In fact, much of the information about the history between A. and Petitioner was elicited by Petitioner's

24   trial counsel, as part of her defense strategy.  The record indicates that she wanted to elicit the

25   information about Petitioner having raped and sodomized A. to show that A had a motive to retaliate

26   against Petitioner.  In addition, defense counsel was the one to first ask A. how old she was when she

27   met Petitioner and when they first had sexual intercourse to establish that it was common in Mexican

28   culture for the husband to be several years older than the wife.  (Lodgment 6, at 402.)  The trial court

1    only allowed the testimony about when they first had sexual intercourse, because defense counsel had

2    questioned A. about the rape and sodomy.

3         Petitioner has not demonstrated that the evidence had a substantial and injurious effect on the

4    jury verdict.  To the extent that this claim states a claim for federal habeas relief, admission of the

5    evidence did not render Petitioner's trial fundamentally unfair in violation of his due process rights.  For

6    the foregoing reasons, the state court's denial of claim one was neither contrary to, nor an unreasonable

7    application of, clearly established U.S. Supreme Court law.  As such, this Court **RECOMMENDS** that

8    this claim be **DENIED**.

9         **2. Claim Two**

10        Claim two of the Petition alleges that Petitioner was denied his due process rights, because the

11   trial court excluded part of the testimony of defense expert witness, Dr. Constance Dalenberg.  (Pet. 16.)

12   According to Petitioner, the trial court limited Dr. Dalenberg's testimony to an examination of studies in

13   which she participated regarding factors that account for false accusations from children.  Dr. Dalenberg,

14   however, was not allowed to give an opinion about the credibility of E., the child witness.  (Pet. 16-17.)

15        Prior to trial, the trial court granted defense counsel leave to call expert witness Dr. Constance

16   Dalenberg on the issue of false reporting of sexual abuse by a child against a parent.  (Lodgment 4, at

17   59.)  Defense counsel stated Dr. Dalenberg would testify regarding clinical studies showing a statistical

18   increase in false reporting based on factors such as divorce, domestic violence, and retaliation for unduly

19   strict discipline.  (*Id.* at 57-58.)  Defense counsel explained the evidence was relevant to the defense

20   theory that Petitioner's wife and children wanted him out of the house, because he was abusive and

21   tyrannical, and they saw a way of getting him out and retaliating against him by fabricating the claims

22   that he had sexually abused E.  (*Id.*)

23        During Dr. Dalenberg's trial testimony, problems emerged with the manner in which she was

24   questioned and with the answers she presented.  The prosecutor and the trial court were concerned that

25   Dr. Dalenberg was in effect giving the jury her opinion that E. was lying about the sexual abuse.

26   (Lodgment 10, at 1301.)  The court called a recess during Dr. Dalenberg's testimony to discuss the

27   matter with the parties.  (*Id.*)  After this discussion and out of the presence of the jury, the court

28   admonished Dr. Dalenberg that she could give research information about factors associated with false

08cv0816

reporting, but she should not give her opinion about the value of the evidence or the credibility of witnesses in this particular case. (*Id.* at 1307-11.) Dr. Dalenberg resumed her testimony with no further admissibility problems.

Thereafter, the court reviewed Dr. Dalenberg's testimony that had been presented to the jury prior to the recess, and concluded that portions of her testimony constituted an improper opinion on E.'s credibility. (Lodgment 12, at 1820-26.) The trial court struck the portions of Dr. Dalenberg's testimony where she stated she reviewed the reports for E.'s case and where she specifically referred to E.'s statements or testimony. (*Id.* at 1824-25.) The court advised counsel that in their arguments to the jury, they could not refer to these stricken aspects of the expert's testimony, although they were free to argue about how the factors identified by the expert applied to the jury's credibility determination. (*Id.* at 1825-26.)

Petitioner contends the trial court's ruling excluding parts of Dr. Dalenberg's testimony was an abuse of discretion that violated his due process right to present a defense. The last reasoned state court opinion that addresses this issue is the state appellate court decision of June 21, 2007. (Lodgment 22.) That court found that the trial court did not abuse its discretion in concluding that portions of Dr. Dalenberg's statements addressing E.'s specific case concerned matters of credibility that could be resolved by the jury without expert assistance. (*Id.* at 20.) This Court finds the state appellate court ruling was neither contrary to, nor an unreasonable application, of clearly established U.S. Supreme Court law.

As explained above, a federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief. *Estelle*, 502 U.S. at 67-68. Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal*, 926 F.2d at 919. In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962); *Crisafi v. Oliver*, 396 F.2d 293, 294-95 (9th Cir. 1968); *Chavez v. Dickson*, 280 F.2d 727, 736 (9th Cir. 1960).

08cv0816

1    Here, the trial court did not strike all of Dr. Dalenberg's statements.  The portions of Dr.

2    Dalenberg's testimony that were admitted without admissibility problems included the following:  Dr.

3    Dalenberg testified that research on child sexual abuse revealed that about 3 to 8 percent of accusations

4    in cases not involving a child custody dispute are false, and about 15 percent are false when there is a

5    child custody or other type of dispute between the parents. (Lodgment 10, at 1292.)  Dr. Dalenberg

6    explained that false reporting can arise from such factors as disassociation (memory disruptions in an

7    abused child); a child's suggestibility; a child's reality testing problems (*i.e.*, hallucinations or hearing

8    voices); the use of leading questions during an interview with a child; and parental conduct of modeling

9    extreme accusations and lying. (*Id.* at 1293-96.)  She testified that disassociation is evidenced when a

10   child presents contradictory accounts within a short period of time without noticing the contradictions,

11   and suggestibility is demonstrated when a child attempts to answer questions in a manner that

12   corresponds with what the examiner is trying to elicit from the child. (*Id.* at 1294.)  Additional factors

13   indicative of false reporting include a child's history of defiance (*i.e.*, "acting out" against authority) and

14   a family motive for a particular outcome. (*Id.* at 1300, 1315.)

15   The trial court struck portions of Dr. Dalenberg's testimony where she specifically referred to

16   E.'s statements or testimony. (*Id.* at 1824-25.)  As the trial court stated he permitted defense counsel to

17   call Dr. Dalenberg to testify about factors that tend to suggest certain percentages of child sexual abuse

18   claims may or may not be reliable. (*Id.* at 1303.)  However, the expert witness was not permitted to

19   testify to the credibility of the particular witness in the case. (*Id.*)  Credibility determinations are left up

20   to the jury. (Lodgment 1, at 87.)  The trial court's ruling was reasonable.  A large portion of Dr.

21   Dalenberg's testimony about false reporting remained on the record, and Petitioner was still able to

22   present the information as part of his defense. Petitioner fails to show how the trial court's ruling

23   rendered his trial fundamentally unfair and denied him due process.

24   Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable

25   application of, clearly established U.S. Supreme Court law.  As such, this Court **RECOMMENDS** that

26   claim two be **DENIED**.

27   ///

28   ///

08cv0816

### IV.  CONCLUSION

After thorough review of the record in this matter and based upon the above discussion, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.  This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **October 23, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 22, 2008

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

13

08cv0816